**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JARED HICKLE | : | |
| 6855 PRIOR PLACE | : | |
| REYNOLDSBURG, OH 43068 | : | |
| | : | CASE NO. 2:15-cv-3068 |
| Plaintiff, | : | |
| | : | JUDGE |
| v. | : | |
| | : | |
| AMERICAN-MULTI CINEMA, INC. | : | |
| d/b/a AMC THEATRES | : | |
| 920 MAIN STREET | : | **Jury Demand Endorsed Hereon** |
| KANSAS CITY, MO 64105 | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

NOW COMES Plaintiff Jared Hickle ("Plaintiff") and proffers this Complaint for damages against Defendant American-Multi Cinema, Inc. dba AMC Theatres. ("Defendant").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 38 U.S.C. §4311(a) *et seq.*- the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

2. This Court has jurisdiction over this action by virtue of 28 U.S.C. §1331 and 38 U.S.C. §4323(b).

3. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) and 38 U.S.C. §4323(c)(2) because the claim arose in the Southern District of Ohio, where at all times material herein Defendant has maintained a place of business at which Plaintiff worked.

## THE PARTIES

4.   Plaintiff Jared Hickle is a resident of Franklin County, Ohio, who was employed by Defendant from November 24, 2004 until May 8, 2015, most recently as the Kitchen Manager at the AMC Theatre located at Easton Town Center in Columbus, Ohio.  At all times material, he was an employee of Defendant as that term is defined by USERRA, 38 U.S.C. 4303(3).

5.   Defendant American-Multi Cinema, Inc. dba AMC Theatres is a foreign Corporation, registered to do business in Ohio, who operates movie theatres throughout the United States.  Upon information and belief, American-Multi Cinema, Inc. does business as AMC Theatres.

6.   Upon information and belief, Defendant is headquartered in Kansas City, Missouri, and operates theatres in several states, including Ohio. At all times material, Defendant was an employer as that term is defined by USERRA, 38 U.S.C. 4303(4)(A).

## FACTUAL BACKGROUND

7.   Plaintiff Jared Hickle began working for Defendant on or about November 24, 2004.  At all times relevant herein, he was employed as the Kitchen Manager of the AMC Theatres location at Easton Town Center in Columbus, Ohio.

8.   Plaintiff's job duties included but were not limited to: ensuring all menu items were fresh, appetizing, and properly prepared, maintaining clean and safe kitchen facilities, conducting line checks to ensure food-safe temperatures and ingredient quality, and communicating with cooks to ensure proper assembly of orders within average ticket times.

9.  At all relevant times, Plaintiff was a member of the Ohio Army National Guard, part of the United States Army. The United States Army is one of the "uniformed services" covered by USERRA, 38 U.S.C. 4303(16).

10. At all relevant times, Plaintiff participated in mandatory Army training drills one weekend every month and annual training once per year; and said participation constituted "service in the uniformed services" within the meaning of 38 U.S.C. 4303(13).

11. Service (including training activity) in the uniformed services constitutes protected activity, under USERRA.

12. Action undertaken by an employee in furtherance or protection of the rights afforded under USERRA also constitutes protected activity under USERRA.

13. At all relevant times, Defendant was aware of Plaintiff's Ohio Army National Guard status.

14. Plaintiff began working for Defendant in November of 2004.  In March of 2008, Plaintiff met with his General Manager, Tim Kalman, to discuss an open management position.

15. Mr. Kalman told Plaintiff he was the "top candidate" being considered for the position.  Plaintiff indicated he was excited to be considered for the position and also informed Mr. Kalman that he recently joined the Ohio Army National Guard.  Therefore, he would be attending Basic Training and Advanced Individual Training from July 2008 to December 2008.

16. Mr. Kalman stopped the interview and told Plaintiff he could no longer be considered a candidate for management. Upon information and belief, that position was filled almost immediately by Plaintiff's co-worker, Michael Shields.

17. In or about December of 2008, when Plaintiff was almost finished with Advanced Individual Training, he received an email from Defendant's Senior Manager at the time, Devin Bolton. Ms. Bolton told Plaintiff that another management position was available and instructed him to email Tim Kalman to apply for the position.

18. Plaintiff emailed Mr. Kalman, but the position was filled almost immediately upon his return from training. Plaintiff was never interviewed for the position.

19. In or about June of 2014, Plaintiff was scheduled to attend another Annual Training for the Ohio Army National Guard.

20. Plaintiff approached Jackie Adler, the Senior Manager in the Kitchen, about his work schedule for the weekend that he was to report to drill. He was scheduled to close the Kitchen, despite giving Defendant notice of his need to attend drill.

21. Plaintiff sent his drill schedule to the Senior Leadership group months in advance, to allow ample time for scheduling.

22. Jackie Adler would often schedule Plaintiff to close the Kitchen on Friday night, when he had to report to drill the next morning. When working Friday nights, Plaintiff typically did not get out of work until approximately 3:00 a.m. on Saturday.

23. As such, this created a problem for Plaintiff because he would have to report to drill at 8:00 a.m. that same morning, merely five hours after getting off work.

24. Plaintiff brought this to Ms. Adler's attention, to which she responded, "Well you better go find another job."

4

25. Plaintiff informed her that his actual orders to attend drill began at 12:00 a.m. on Saturday morning so he technically should not be working past 11:59 p.m. on Friday night.  She told him, "sounds like a personal problem."

26. Plaintiff immediately reported this to Tim Kalman and explained he did not appreciate his job being threatened because of his military obligations.  Mr. Kalman indicated he would speak with Ms. Adler about Plaintiff's concerns.

27. After this conversation with Ms. Adler, Plaintiff filed a complaint with his ombudsman from Employer Support of the Guard and Reserve ("ESGR").  Plaintiff also emailed Ms. Adler and Mr. Kalman and requested a meeting to discuss his complaint.

28. When Plaintiff returned from his Annual Training he attended a meeting at which Ms. Adler, Mr. Kalman, and Plaintiff were present.  Mr. Kalman questioned Plaintiff why he desired a meeting to address his complaint.

29. Plaintiff told Mr. Kalman he wanted to meet because he felt his complaint was not being taken seriously.

30. In early April of 2015, Plaintiff reminded Ms. Adler he could not work the weekend of May 1-3, 2015, due to his military drill obligations.  This weekend was also the premier of the popular "Avengers" movie, anticipated to be one of Defendant's busiest weekends of the year.

31. Ms. Adler laughed at Plaintiff and said, "Well then we will just have to fire you if you are not going to be here that weekend."

32. Plaintiff told Ms. Adler he could not be fired due to military obligations and she said, "You are missing one of the busiest weekends, so yes, we can."

33. On or about April 17, 2015, two cooks working in the Kitchen became insubordinate with Plaintiff when he informed them that it was against Defendant's policy for them to take food home with them.

34. Plaintiff reported the incident to Ms. Adler, who instructed Plaintiff to provide a written statement regarding the incident. The two other individuals involved supplied statements as well and were suspended as a result of their conduct.

35. The next day, Plaintiff was told that some of the employees in the Kitchen were angry about the suspension of their co-workers, so they were plotting to get Plaintiff fired.

36. Plaintiff informed Ms. Adler about what he was told and she told him to gather written statements about what occurred, and provide them to her.

37. As instructed, Plaintiff then retrieved written statements, and provided them to Ms. Adler and Mr. Kalman on or about April 19, 2015. The statements contained information Plaintiff received from his co-workers.

38. After speaking with some of his co-workers, Plaintiff was told Ms. Adler wanted him fired.

39. Plaintiff was told that Ms. Adler said if she could collect enough statements that contained complaints about Plaintiff, she could go above Tim Kalman's head for the termination.

40. Plaintiff typed everything he was told into a written statement and provided it to Stephanie McClelland, Defendant's Senior Manager.

41. On or about April 21, 2015, Plaintiff spoke to Mary Melton-Miller, Defendant's Compliance Manager, Mr. Kalman and Ms. McClelland.  Ms. Melton-Miller told Plaintiff he was being placed on an investigatory suspension.

42. Plaintiff was placed on suspension following this call.  He received a follow-up call from Ms. Melton-Miller the next day, April 22, 2015.

43. During this call, Plaintiff spoke to her not only about this incident, but also about Ms. Adler's discriminatory and hostile treatment of him because of his military obligations.

44. Plaintiff asked Ms. Melton-Miller why he was suspended, as he had done nothing wrong.  Plaintiff explained that he had merely followed the instruction of Ms. Adler and retrieved written statements regarding what occurred.

45. Plaintiff did not hear from Ms. Melton-Miller as of May 5, 2015 so he sent her an email on May 6, 2015, asking if any progress had been made.

46. On May 8, 2015, Mr. Kalman terminated Plaintiff for "substandard performance." Mr. Kalman told Plaintiff that if he had any questions about the termination, he was to contact Keana Bradley, Defendant's Performance Manager.

47. Plaintiff then contacted Ms. Bradley, and she informed him his "substandard performance" was due to "starting his own investigation by taking statements from co-workers."

48. When Plaintiff explained that he was instructed by Ms. Adler to obtain the written statements, Ms. Bradley responded that she was unaware of such information.

49. At all relevant times, Defendant took adverse action against Plaintiff, including discharge, at least in part because of his engagement in activity protected under USERRA, 38 U.S.C. 4311.

## COUNT I

### USERRA violation

50. The preceding paragraphs are realleged and reincorporated as if fully rewritten herein.

51. By reason of the foregoing acts and omissions, and in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. 4311(a) and/or (b), Plaintiff Jared Hickle has been denied his rights to retention in employment and/or to be free from retaliation for taking action to protect his right to retention in employment, proximately resulting in reasonably foreseeable damages, in an amount greater than $75,000, in terms of: loss of salary and value of benefits to date of trial ("Back Pay") and, potentially, thereafter ("Front Pay"); mental anguish and emotional distress (requiring professional care and treatment); humiliation and disparagement of reputation; impairment and diminution of future earning capacity and career prospect; and general loss of enjoyment of life, all warranting an award of general compensation ("Compensatory Damages"); and an equal amount as liquidated damages ("Liquidated Damages"), which ought to be awarded against Defendant because of its intentional, malicious, willful, wanton and/or reckless violations of Plaintiff's rights.

## COUNT II

### Violation of 41 ORC §4112.02(A)

52. The preceding paragraphs are realleged and incorporated herein.

53. By reason of the foregoing acts and omissions, it was unlawful discriminatory practice for Defendant to discharge Plaintiff Hickle because of his military status, without cause, or otherwise to discriminate against him with respect to any matter directly or indirectly related to employment.

## COUNT III

### USERRA violation- Failure to Promote

54. The preceding paragraphs are realleged and incorporated herein.

55. By reason of the foregoing acts and omissions, and in violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. 4311(a) and/or (b), Plaintiff Jared Hickle has been discriminated against in the denial an entitled right or benefit and/or his rights to retention in employment and/or to be free from retaliation for taking action to protect his right to retention in employment, proximately resulting in reasonably foreseeable damages, in an amount greater than $75,000, in terms of: loss of salary and value of benefits to date of trial ("Back Pay") and, potentially, thereafter ("Front Pay"); mental anguish and emotional distress (requiring professional care and treatment); humiliation and disparagement of reputation; impairment and diminution of future earning capacity and career prospect; and general loss of enjoyment of life, all warranting an award of general compensation ("Compensatory Damages"); and an equal amount as liquidated damages ("Liquidated Damages"), which ought to be awarded against Defendant because of its intentional, malicious, willful, wanton and/or reckless violations of Plaintiff's rights.

## COUNT IV

### Violation of 41 ORC §4112.02- Failure to Promote

56. The preceding paragraphs are realleged and incorporated herein.

57. By reason of the foregoing acts and omissions, it was unlawful discriminatory practice for Defendant to fail to promote Plaintiff Hickle because of his military status, without cause, or otherwise to discriminate against him with respect to any matter directly or indirectly related to employment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. Trial by jury, pursuant to Fed. R. Civ. P. 38 and U.S. Const., Amend. 7 on all issues of law;

B. Judgment against Defendant for damages in an amount greater than $300,000;

C. Judgment for Plaintiff, in accordance with each Count hereof, for said sums of Back and Front Pay, plus prejudgment interests and costs, as well as reasonable attorneys' and expert witness' fees and expenses under USERRA; and

D. Such other relief and redress as the Court may deem appropriate.

Respectfully submitted,

/s/Peter Friedmann
Peter G. Friedmann (0089293)
(*Pete@thefriedmannfirm.com*)
Rachel A. Sabo (089226)
(*Rachel@thefriedmannfirm.com*)
**The Friedmann Firm LLC**
1457 S. High Street

10

Columbus, Ohio 43207
Telephone: 614-610-9756
Fax: 614-737-9812

*Counsel for Plaintiff*


## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law

on all issues herein triable to a jury.

/s/Peter G. Friedmann
Peter G. Friedmann (0089293)